IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYMAN AL-LOUSSI, | |
| Plaintiff, | |
| v. | Case No. 19-cv-0871 |
| NATIONAL RAILROAD PASSENGER CORPORATION D/B/A AMTRAK, ROBERT MCHUGH AND ZACHERY ERZINGER, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Ayman Al-Loussi alleges he was discriminated against by his former employer, Amtrak. Mr. Al-Loussi also brings state law claims for intentional infliction of emotional distress and wrongful termination. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss his claims with prejudice, except for his § 1981 race discrimination claim. For the reasons stated herein, Defendants' Partial Motion to Dismiss [40] is granted in large part.

**I.  Background**

The following factual allegations are taken from the Amended Complaint (Dkt. 37 "Am. Compl.") and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Al-Loussi was hired by Amtrak in about 1999 as a sheet metal worker. Am. Compl. ¶3. He alleges he was subjected to discrimination because of his "Asian race, Jordanian national origin, Orthodox Christian religion, male sexual orientation,

1

being over the age of 40 and physical disability." *Id*. Robert McHugh, General Foreman for Amtrak, prohibited Al-Loussi from any overtime assignments, although he allowed other employees overtime, and gave Al-Loussi an unreasonable workload. *Id*. ¶¶7, 8. Al-Loussi initiated a complaint with the union over McHugh's work disparity. *Id*. ¶9. McHugh was admonished by upper management to not treat Al-Loussi in a discriminatory manner and McHugh thereafter retaliated against Al-Loussi for making his complaint. *Id*. ¶¶10, 11.

Al-Loussi alleges that similarly situated white employees were treated better than him as well as similarly situated non-Muslim employees. *Id*. ¶¶13, 14. Al-Loussi was injured on the job and forced to take time off from work as a result of his medical condition. *Id*. ¶17. When he returned to normal work duty, Al-Loussi requested to be assigned to the yard, rather than the station, in order to avoid McHugh. *Id*. ¶18. Al-Loussi was assigned to the yard but McHugh began working there a few months later. *Id*. ¶¶18, 19. Zachery Erzinger was another employee who worked in the yard. *Id*. ¶20. Erzinger called Al-Loussi a "terrorist." *Id*. ¶21. McHugh and Erzinger called Al-Loussi "Muslim", "Terrorist", "Sand Nigger" and other derogatory words. *Id*. ¶29. They called him "Haji" and imitated Seal Team 6 assassinating Osama Bin Laden, and made remarks about him having a bomb. *Id*. ¶31. Al-Loussi also alleges he was spat at. *Id*. ¶49. Al-Loussi claims he experienced the hostile work environment because of his race (Arab/Asian continent) and national origin (Jordanian). *Id*. ¶29.

Erzinger and Al-Loussi got into an altercation and both were pulled out of service for investigation. *Id*. ¶23. Only Al-Loussi was terminated, in August 2017. *Id*.

2

Al-Loussi's amended complaint brings claims for age discrimination (Count I), race and national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 (Count II), Title VII discrimination based on sexual orientation (Count III), IIED (Count IV), and wrongful termination (Count V).[1] Defendants have moved to dismiss all of Al-Loussi's claims except for his § 1981 race discrimination claim. In response to Defendants' motion, Al-Loussi states that he "will voluntarily dismiss Count I (Age discrimination); and Title VII claims. Notwithstanding this, Plaintiff stands by [his Section] 1981 claim based on racial and ethnic discrimination; IIED claim; and Wrongful Termination Claim." (Dkt. 48 at 1).

**II.    Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations",

---

[1] Al-Loussi voluntarily dismissed his suit without prejudice on August 26, 2019. (Dkt. 34). He then re-filed one year later. (Dkt. 37).

3

but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

### III. Analysis

**A. Dismissed Claims**

In response to the motion to dismiss, Al-Loussi voluntarily dismisses his claims brought under Title VII and the Age Discrimination in Employment Act (ADEA). The Court also dismisses his disability claim. The Amended Complaint briefly mentions that Al-Loussi has a disability but he does not explain what the disability is or provide any allegations to support a claim of disability discrimination. In addition, Al-Loussi did not respond to Defendants' arguments in their motion about why his disability claim should be dismissed, resulting in waiver. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties…If [judges] are given plausible reasons for

4

dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (cleaned up); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (waiver applies "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

Therefore Counts I and III are dismissed. Count II is also dismissed to the extent it is based on Title VII. Given that this is now the second time Al-Loussi has voluntarily dismissed these claims, and as explained below, the Court will not permit any further amendment, the Court dismisses the aforementioned claims with prejudice.

**B. Failure to Serve**

Defendants request that the Court dismiss from the case individual defendants McHugh and Erzinger. That request is granted. Al-Loussi failed to serve the Individual Defendants with either the original or amended complaint. On September 10, 2020, this Court's order stated that Al-Loussi was required to serve those individuals within 90 days of the filing of his Amended Complaint. (Dkt. 39). The Court specifically warned that its order served "as notice under Federal Rule of Civil Procedure 4(m) that failure to properly serve a defendant within 90 days of filing of a complaint will result in dismissal of the party." (*Id.*) In a joint status report filed in November 2020, not long before the service deadline, Al-Loussi acknowledged that McHugh and Erzinger still had not been served. (Dkt. 46). This case contains no record of service on McHugh or Erzinger. Al-Loussi also fails to address the issue in

5

his response brief to the motion to dismiss. (Dkt. 48). *See Roberts v. Jensen*, 801 F. App'x 422, 428 (7th Cir. 2020) (plaintiff failed to serve individual defendant and failed to make any showing of good cause for an extension).

Therefore McHugh and Erzinger are dismissed without prejudice and are terminated as Defendants in this case.

**C. Section 1981 Claims**

In light of the foregoing, the remaining claims are the § 1981 claim, IIED claim, and wrongful termination claim. Amtrak states that it does not seek dismissal of the § 1981 race discrimination claim. But it argues that Al-Loussi should not be able to proceed on a theory of national origin discrimination. Al-Loussi responds that his complaint shows the discrimination he faced was based on his "middle eastern, Arab, Jordanian race and ethnic origin." (Dkt. 48 at 3).

Amtrak acknowledges that ethnicity is protected under § 1981. (Dkt. 41 at 9). As the Seventh Circuit recently explained, "[f]or purposes of § 1981, 'national origin' is not protected, *but 'ethnicity'…is." Arevalo-Carrasco v. Middleby Corp., Inc.*, 2021 WL 1511262, at *2 (7th Cir. Apr. 16, 2021) (citations omitted) (emphasis added). *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028, 95 L. Ed. 2d 582 (1987) ("Congress intended [in § 1981] to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.")

The U.S. Supreme Court in *Saint Francis Coll.* explained that "[i]f respondent…can prove that he was subjected to intentional discrimination based on

6

the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." 481 U.S. at 613. At times Al-Loussi's complaint refers to his "national origin" but he also refers to his race and ethnicity and alleges that he was targeted because he is Arab. (e.g. Am. Compl. ¶¶29, 31.) *See Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 509 (N.D. Ill. 2012) ("While it is true that there is ambiguity in this case because 'race' and 'national origin' appear to coincide, that is not a sufficient basis for dismissing Plaintiff's Section 1981 claims at this time."); *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018) (the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor.")

Al-Loussi cannot proceed on a claim that he was discriminated against based on his national origin (being from Jordan) or (perceived) religion (Muslim).[2] However Al-Loussi has sufficiently stated claims of discrimination based on his race and ethnicity under § 1981.

**D. IIED**

Under Illinois law, an IIED claim requires "(1) extreme and outrageous conduct, (2) intent by the defendant to cause emotional distress, and (3) severe or extreme emotional distress on the part of the plaintiff due to the defendant's conduct." *Saunders v. City of Chicago*, 299 F. Supp. 2d 869, 872 (N.D. Ill. 2004) (citation omitted). IIED claims have a two-year statute of limitations. 735 ILCS 5/13-202; *see*

---

[2] Al-Loussi explains that he is Orthodox Christian but McHugh and Erzinger perceived him to be Muslim. Am. Compl. ¶31.

*also Bedin v. Nw. Hosp.*, 2017 IL App (1st) 151547-U, ¶ 21 (1st Dist. 2017). Al-Loussi was terminated in August 2017. (Am. Comp. ¶ 23). Amtrak argues that since the Amended Complaint was filed in August 2020, Al-Loussi's claim is time-barred. Although complaints do not generally need to anticipate affirmative defenses, "[t]he exception occurs where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), as amended on denial of reh'g and reh'g en banc (Aug. 11, 2005).

Al-Loussi does not dispute that dismissal of a lawsuit without prejudice does not toll the statute of limitations. *See Dupuy v. McEwen*, 495 F.3d 807, 810 (7th Cir. 2007). Instead he contends that his IIED claim is timely under the continuing violation doctrine. (Dkt. 48 at 3-4). Al-Loussi argues that on November 8, 2018 he was notified of the "final decision" and he says "throughout this time he continued to face humiliation." *Id.* at 4. The November 8, 2018 letter he references and attaches to his response brief is the letter from his Union Board about his dismissal from Amtrak and notifying him that he did not prevail on appeal. (Dkt. 48, Exh. A).

However Al-Loussi's amended complaint contains no allegations that he faced humiliation from the time of his termination in August 2017 through November 2018. To the contrary, the conduct he complains of "happened before he was terminated." (Am. Comp. ¶ 31). *See Atkins v. Coca Cola Enterprises, Inc.*, 2007 WL 4219196, at *8 (N.D. Ill. Nov. 28, 2007) (continuing violation doctrine did not apply to plaintiff's

8

claims because "there are no allegations of intentional infliction of emotional distress after her resignation."). To the extent his complaint can be construed as claiming that some of Defendants' conduct occurred after he was terminated, he makes no specific allegations in this regard. In alleging, for example, that McHugh and Erzinger called him derogatory words, he says that "[t]his was done before he was terminated, and within 300 days of his being terminated." (Am. Comp. ¶ 29). Affording the amended complaint a very liberal reading, Al-Loussi seems to allege that 300 days after his termination he continued to be called derogatory names by McHugh and Erzinger. Still, that would mean the last date of the allegedly wrongful conduct occurred in June 2018. Even tolling the time until June 2018 means that Al-Loussi was required to file his complaint by June 2020, but the Amended Complaint was filed in August 2020.

Al-Loussi's second argument is that "[t]hroughout this time, he also faced a criminal case related to the incidents in question November 20, 2017." (Dkt. 48 at 4). There are two main problems with this argument. First, his Amended Complaint contains no allegations that he endured emotional distress because of his criminal case. Second, even if it had, he makes no allegation that *Defendants* were responsible for or involved in his criminal case. An IIED claim requires both intent by the *defendant* to cause emotional distress and that plaintiff experienced severe or extreme emotional distress on *due to the defendant's conduct. See Saunders*, 299 F. Supp. 2d at 872.

Count IV is untimely and is therefore dismissed with prejudice. *See Atkins*, 2007 WL 4219196, at *8 (time-barred IIED claim dismissed with prejudice).

**E. Wrongful Termination**

Under Illinois law, employment contracts are presumed to be at-will and are terminable by either party. *Kalush v. Deluxe Corp.*, 171 F.3d 489, 492 (7th Cir. 1999); *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 505 N.E.2d 314 (1987). However "an employee handbook may create contract rights that may be enforced by an employee" if certain conditions are met. *Dawson v. City of Geneseo*, 2018 IL App (3d) 170625, ¶ 18, 127 N.E.3d 655, 663–64 (3d Dist. 2018). The following three contract elements must be present: "(1) the language of the handbook contains a promise clear enough that the employee would reasonably believe that an offer has been made, (2) the handbook is disseminated to the employee so that the employee is aware of its contents and reasonably believes the promise contained therein to be an offer, and (3) the employee starts working for the employer or continues to do so, thereby accepting the offer and providing consideration through his or her continued employment." *Id. See also Jackson v. Avanti/Case-Hoyt, Inc.*, 2003 WL 942840, at *3 (N.D. Ill. Mar. 5, 2003) ("Illinois courts have consistently held that an employee handbook creates enforceable contractual rights only when specific procedures have been prescribed by positive and mandatory language.").

Al-Loussi argues that Amtrak's employee handbook used language creating enforceable contractual rights. (Dkt. 48 at 8). His complaint refers to the "personnel manual" which he says "details the evaluation and termination policy and procedure,

including progressive discipline." (Am. Comp. ¶ 70). Neither his complaint nor his response brief attach the handbook or cite any language from the handbook. It is not clear what particular alleged promise was made to Al-Loussi or whether he reasonably believed the promise to be an offer. Al-Loussi argues in his response brief that the handbook contained "mandatory language" (Dkt. 48 at 8) but his complaint contains to allegation to this effect. And he provides no specifics about what language was used in the handbook. *See Doe v. First Nat. Bank of Chicago*, 865 F.2d 864, 872 (7th Cir. 1989) (employee memorandum contained "none of the clear, promissory language" required to create an enforceable contract).

Al-Loussi has not adequately alleged his wrongful termination claim. Count V is therefore dismissed with prejudice.

**F. Request to Amend**

Defendant seeks dismissal of all claims at issue in their motion with prejudice. Al-Loussi requests leave to amend. Al-Loussi's request is denied. Allowing him to amend his complaint again would be futile and another amended complaint could not withstand a motion to dismiss. *See Villars v. Kubiatowski*, 128 F. Supp. 3d 1039, 1043 (N.D. Ill. 2015) (citing *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992)). Al-Loussi would not be able to overcome the statute of limitations bar with respect to his IIED claim.

In addition, despite Defendants' specific arguments for dismissal of his wrongful termination claim, Al Loussi still did not provide any details to support that claim. He not only had a full year after voluntarily dismissing his suit to plead facts

11

sufficient to support his wrongful termination claim, but when Al-Loussi failed to respond to the present motion to dismiss, the Court sua sponte extended his deadline. (Dkt. 43). When Al-Loussi did not meet this extended deadline, the Court permitted him to file his response brief instanter. (Dkt. 51).

Finally, although he requests permission to amend, Al-Loussi fails to explain how he would cure the defects in his Amended Complaint. "Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing." *Haywood*, 887 F.3d at 335.

## IV. Conclusion

For these reasons, Defendants' Partial Motion to Dismiss [40] is granted in large part. Robert McHugh and Zachery Erzinger are dismissed without prejudice and the Clerk is directed to terminate them as Defendants. All of Plaintiff's claims are dismissed with prejudice except for his § 1981 claim for discrimination based on race and ethnicity (Count II). Amtrak is ordered to answer that claim by June 30, 2021.

E N T E R:

Dated: June 14, 2021

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge